**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ABIMAEL FELICIANO RIVERA,

     Plaintiff,

         v.                         CIVIL NO.: 20-1374 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

**OPINION AND ORDER**

## I.    Procedural and Factual Background

Pending before the court is Mr. Abimael Feliciano Rivera's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits under the Social Security Act. ECF No. 19. On January 7, 2019, Plaintiff filed an application for Social Security benefits alleging that he initially became unable to work due to disability on October 16, 2017 ("the onset date"). Tr. 26. Prior to the onset date, Plaintiff had worked as a firefighter and as an infantryman. Tr. 36. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. Tr. 27. Plaintiff's disability claim was denied on July 3, 2019 and upon subsequent reconsideration. Tr. 26.

Thereafter, Plaintiff requested a hearing which was held on February 19, 2020 before an Administrative Law Judge ("the ALJ"). Tr. 26, 38. On March 11, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 38. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1–4.

Plaintiff filed a complaint on August 1, 2020. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 19, 28.

## II.    Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R.

§ 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step

two requires the ALJ to determine whether plaintiff has "a severe medically determinable

physical or mental impairment" or severe combination of impairments. 20 C.F.R.

§ 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's

impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found

to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether

plaintiff's impairment or impairments prevent him from doing the type of work he has done in

the past. 20 C.F.R. § 404.1520(a)(4)(iv).

        In assessing an individual's impairments, the ALJ considers all of the relevant evidence

in the case record to determine the most the individual can do in a work setting despite the

limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This

finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ

concludes that plaintiff's impairment or impairments do prevent him from performing his past

relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether

plaintiff's RFC, combined with his age, education, and work experience, allows him to perform

any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that plaintiff can perform, then

disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff will meet the insured status requirement of the Social Security Act through December 31, 2023. Tr. 28.[1] At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 16, 2017 through the date of the hearing. Tr. 29. At step two, the ALJ determined that Plaintiff had the following severe impairments: mild right carpal tunnel syndrome, bilateral knee chondromalacia, bilateral L5 radiculopathy, and neuralgia parthestica. Tr. 29. However, the ALJ specifically determined that Plaintiff's determinable mental impairments of major depressive disorder and generalized anxiety disorder, considered singly and in combination, were non-severe impairments. Tr. 29. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 31. Next, the ALJ determined that during the relevant period:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that the claimant can lift, carry, push, and pull 10 lbs. occasionally and less than 10 lbs. frequently. Sit for six (6) hours, alternate to standing for 10 minutes, after every two (2) hours of sitting. Stand and walk for two (2) hours each in an 8-hour workday. The claimant can operate foot controls with the left foot occasionally. He needs a cane to walk on unstable terrain. The claimant retains the ability to climb ramps and stairs occasionally, never climb ladders, ropes, or scaffold, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, never with moving mechanical parts, and never operating a motor vehicle for commercial use. The claimant can work in extreme cold occasionally and in vibration occasionally.

Tr. 32. At step four, the ALJ determined that during the relevant period, Plaintiff could not perform his past relevant work as a firefighter or an infantryman. Tr. 36. At step five, the ALJ

---

[1] Because the ALJ's decision was published on March 11, 2020, her evaluation preceded Plaintiff's date last insured. Tr. 29, 45.

presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert ("VE"). Tr. 37. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: document preparer, call out operator, and ticket counter. Tr. 37. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that he was not disabled. Tr. 37.

### III.    LEGAL ANALYSIS

Plaintiff raises three main arguments in his memorandum of law. First, Plaintiff argues that the ALJ erred by failing to recognize or analyze Plaintiff's obesity at any step of the sequential process. ECF No. 19 at 15–20. Second, Plaintiff contends that the ALJ erred at step two by labeling Plaintiff's mental impairments as non-severe, when instead their severity should have been taken into account in the RFC calculation. ECF No. 19 at 23–31. Finally, Plaintiff asserts that the ALJ erroneously found that there were sufficient jobs for Plaintiff in the national and local economy. ECF No. 19 at 21–23.

### A.  THE ALJ'S FAILURE TO CONSIDER PLAINTIFF'S OBESITY

First, Plaintiff claims that the ALJ committed reversible error because the ALJ failed to recognize or consider Plaintiff's obesity, and therefore erroneously failed to take his obesity into account at steps two, three, four, or five of the sequential process. ECF No. 19 at 15–20. Plaintiff is correct that at no point in the ALJ's decision is obesity mentioned whatsoever, and therefore it was not considered as either a severe or non-severe impairment. Tr. 29.

### 1.    The Plaintiff's Burden to Show Obesity

The plaintiff bears the burden of production at the first four steps of the sequential process. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). As such, an ALJ need only "consider only impairment(s) you [the plaintiff] say you have or about which we receive

evidence." 20 C.F.R. § 404.1512(a)(1). In making a finding of an impairment of obesity, the

Social Security Ruling ("SSR") 19-2p provides that the ALJ "will not use a diagnosis or a

statement of symptoms to establish the existence of" obesity as a Medically Determinable

Impairment ("MDI"). SSR 19-2p, 2019 WL 2374244, at *3. Instead, "[w]hen deciding whether a

person has an MDI of obesity, we consider the person's weight over time. We consider the

person to have an MDI of obesity as long as his or her weight, measured waist size, or BMI

shows a consistent pattern of obesity." Id.

 In his memorandum of law before the court, Plaintiff cited to only two pages of the

approximately 2,800 in the record which relate to obesity, wherein consultative examiner

Dr. Luis Acevedo Marty diagnosed Plaintiff with obesity on June 11, 2019 and noted that

Plaintiff had a body mass index ("BMI") of 31.1. Tr. 940, 942. This single diagnosis and BMI

measurement at one point in time is not enough to establish a pattern of obesity over time as a

medically determinable impairment. SSR 19-2p, 2019 WL 2374244, at *3. Even if it was,

Plaintiff's request for remand on the obesity issue can be denied on the sole basis that Plaintiff

failed to raise obesity at the administrative level.

### 2. Plaintiff's Failure to Raise Obesity at the Administrative Level

 If a plaintiff fails to raise an impairment, such as obesity, at the administrative level, the

ALJ is not affirmatively obligated to consider that impairment. Benítez v. Astrue, 2011 WL

6778534, at *4 (D. Mass. Dec. 20, 2011) ("First, and perhaps most importantly, neither obesity

nor mental illness was mentioned in Plaintiff's application for benefits and, further, neither he

nor his attorney at the time raised those conditions during the administrative hearing, as the

transcript confirms"); Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005) ("This failure

alone could dispose of his claim, as it has been persuasively held that an administrative law

judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.") (citing <u>Pena v. Chater</u>, 76 F.3d 906, 909 (8th Cir. 1996) (internal quotations omitted); <u>Domingue v. Barnhart</u>, 388 F.3d 462, 463 (5th Cir. 2004); <u>Breath v. Colvin</u>, 2015 WL 5569020, *5 (W.D. Okla. Aug. 26, 2015) ("Moreover, even if the ALJ's analysis was not expressed in compliance with SSR 02–1p, the ALJ was under no affirmative duty to consider obesity given that Plaintiff did not claim it as a disabling impairment.").

Defendant argues that Plaintiff did not raise obesity at any point at the administrative level, and only now raises obesity as an impairment in this appeal. ECF No. 28 at 7. An examination of the record reveals that the Plaintiff did not raise or even mention obesity in his initial disability report of January 29, 2019 (Tr. 550–61), first function report from February 21, 2019 (Tr. 110–17; 582–89), his second function report from August 29, 2019 (Tr. 126–33, 609–16),[2] or in his disability report for his appeal on October 9, 2019 (Tr. 627–34). Likewise, Plaintiff did not allege or mention obesity as an impairment at the hearing before the ALJ on February 19, 2020 (Tr. 46–72), nor did Plaintiff raise the issue of Plaintiff's obesity when cross-examining medical expert Dr. Gilberto Muñoz at the hearing, who identified all of Plaintiff's medically determinable physical impairments in the record—but did not mention obesity. Tr. 57–61. Plaintiff bears the burden of production at the first four steps of the sequential process, and the ALJ was under no obligation to investigate an impairment which the Plaintiff did not allege or even mention at the administrative level.

---

[2] Plaintiff filed two function reports on August 29, 2019. Tr. 126–33; 609–16; Tr. 134–41; 617–24. They appear to be identical except that one includes the date ("08/29/2019") and the other does not. Regardless, neither of the function reports mentions obesity.

### 3.        Harmless Error

Additionally, even if the ALJ was obligated to affirmatively raise Plaintiff's obesity diagnosis, the ALJ's failure to discuss Plaintiff's obesity is harmless error. In analyzing the sequential steps, even with a diagnosis of obesity in the record, the Social Security Administration will "consider any functional limitations in the person's ability to do basic work activities resulting from obesity and from any other physical or mental impairments" SSR 19-2p, 2019 WL 2374244, at *3. However, the ALJ "will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s). Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment. We evaluate each case based on the information in the case record." Id. at *2. As such, "the functional limitations such obesity and other impairments cause must be shown in the record. In the absence of such evidence, an ALJ's failure to address a claimant's obesity is a harmless error." Hagigeorges v. Astrue, 2012 WL 5334771, *13 (D. Mass. Oct. 25, 2012) (citing SSR 02-1p, 2002 WL 34686281)[3]; Romero v. Astrue, 242 Fed. Appx. 536, 542 (10th Cir. 2007) ("Ms. Romero did not allege disability based on obesity, and the ALJ did not list obesity among her severe impairments at step two of the sequential analysis. Although her physicians included obesity as a diagnosis, none of the medical evidence identified any

---

[3] Social Security Ruling 19-2p, which became effective May 20, 2019, rescinded and replaced SSR 02-1p which is cited by Hagigeorges. Plaintiff urges that SSR 02-1p is applicable to this case rather than SSR 19-2p because Plaintiff's application for benefits was filed on January 7, 2019, before SSR 19-2p became effective. ECF No. 19 at 17, n. 2. However, because an SSR is intended to provide guidance on adjudication and is binding on the Social Security Administration the day it becomes effective, then the date of the ALJ's decision with relation to the effective date of a new SSR is the key to determine which SSR applies to our examination of the ALJ decision. See Tabeth S.B. v. Saul, 2019 WL 5866068, *2 (D. Me. Nov. 8, 2019) ("SSR 96-6p was superseded effective March 27, 2017, by Social Security Ruling 17-2p ("SSR 17-2p") . . . The ALJ issued the decision at issue on March 28, 2018, . . . well after SSR 96-6p was rescinded.); see also Coskery v. Berryhill, 892 F.3d 1, 5 (1st Cir. 2018) ("the text of the new SSR does appear to favor the SSA's view that it does not apply to ALJ rulings rendered prior to the SSR's effective date.") (dicta). Because SSR 19-2p became effective on May 20, 2019, and the ALJ decision in this case was issued on March 11, 2020, the applicable SSR in this case is SSR 19-2p. Even so, the outcome in this case with regard to Plaintiff's obesity would be the same applying either SSR 02-1p or SSR 19-2p.

specific restriction on her ability to work attributable to obesity."); see also Domingue, 388 F.3d at 463 ("At the administrative level Domingue did not contend that depression was an impairment, and, in the courts, she pointed to no evidence indicating that her alleged depression affected her ability to work.").

Plaintiff argues that had the ALJ considered Plaintiff's obesity, the ALJ may have found that Plaintiff suffers a listed impairment at step 3, if "[f]or example, . . . the obesity is of such a level that it results in an inability to ambulate effectively." ECF No. 19 at 18. Furthermore, Plaintiff argues that "obesity can be found to cause limitation of function", such as "sitting, walking, lifting, carrying, pushing, . . . pulling . . . climbing, balance, stooping, . . . crouching . . . [and] the ability to manipulate [with the hands and fingers]." ECF No. 19 at 19. The Plaintiff also points to his use of a cane to argue that his obesity "[o]bviously" has affected his "ability to walk and maintain balance." ECF No. 19 at 19; Tr. 32.

However, the Plaintiff cites no evidence in the record which provides evidence of a connection between Plaintiff's obesity, his ability to walk, his use of a cane, or any other functional limitation. Plaintiff's obesity may very well contribute in some way to his physical limitations and his need for a cane; however, Plaintiff cited no evidence in the record which would allow the ALJ to make that connection. The only physician who even discussed Plaintiff's obesity—Dr. Acevedo—did not indicate any functional deficiencies in the areas identified by the Plaintiff. In fact, Dr. Acevedo found that Plaintiff's gait was normal, Plaintiff was capable of a wide range of bodily motion, Plaintiff had "excellent sensory function at both upper and lower extremities," and Plaintiff was fully able to grip, grasp, pinch, tap his fingers, button a shirt, pick up a coin, and write. Tr. 940–49. Dr. Acevedo did not otherwise identify any area where Plaintiff was functionally limited because of a combination of his obesity with his other impairments.

Furthermore, because Dr. Acevedo's examination is the only evidence in the record to which Plaintiff cites to support his obesity impairment, no other evidence which Plaintiff cited from the record could lead the ALJ to find that obesity contributed to any functional limitation for Plaintiff. Therefore, even if this case were remanded, no other evidence cited from the record would likely change the outcome of the Plaintiff's case. Because no evidence specifically cited in the record addresses the functional effects of Plaintiff's obesity combined with his other impairments, including no testimony at the hearing before the ALJ, any such failure to discuss Plaintiff's obesity by the ALJ would constitute harmless error.

## B. THE ALJ'S FINDING THAT PLAINTIFF'S MENTAL CONDITIONS WERE NON-SEVERE IMPAIRMENTS AT STEP TWO

Plaintiff next contends that the ALJ erred at step two of the sequential process by not classifying Plaintiff's major depressive disorder as a severe impairment, and therefore not including functional restrictions related to his depressive disorder in the RFC. ECF No. 19 at 23–31. While the claimant bears the burden of demonstrating that his impairments are severe, the step two severity finding is a *di minimis* hurdle for a claimant, solely designed to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). A claimant's impairment is non-severe where medical evidence demonstrates that the impairment is only a slight abnormality which has no more than a minimal effect on the claimant's ability to work, without consideration of the claimant's age, education, or work experience. González García v. Sec'y of Health & Human Servs, 835 F.2d 1, 2 (1st Cir. 1987) (citing McDonald, 795 F.2d at 1124); Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).

### 1. Substantial Evidence

A finding that a claimant's impairment is non-severe must be supported by substantial evidence, and the ALJ must explain his reasoning. Charpentier v. Colvin, 2014 WL 575724, at

*12 (D.R.I. Feb. 11, 2014) (citing <u>Anthony v. Sullivan</u>, 954 F.2d 289, 296 (5th Cir. 1992)). Under the Code of Federal Regulations, in evaluating the severity of a mental impairment, the ALJ must use the "Paragraph B" criteria from Section 12:00E of the Appendix 1 listing of impairments. 20 C.F.R. § 404.1520a(c)(2)–(3) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B)). Accordingly, the ALJ will use the Paragraph B "four broad functional areas" and "rate the degree of [the claimant's] functional limitation . . ." to "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B). In rating the degree of limitation in each of the four functional areas, the ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the claimant's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). A mild limitation means that the claimant's functioning in the area is "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2b.

   **a.  Understanding, remembering, or applying information**

   In the area of understanding, remembering, or applying information, the ALJ found that Plaintiff only had a mild limitation. Tr. 30. The ALJ broadly cited Plaintiff's progress notes and medical reports and concluded that the evidence in the record did not "support the [Plaintiff] having significant difficulty in understanding or following instructions" and that Plaintiff was able to follow instructions, comply with treatment and concentrate and pay attention effectively.

Tr. 30. For example, the ALJ cited to consultative examiner Dr. Acevedo's finding that Plaintiff suffered "no memory loss." Tr. 939. The ALJ also cited the examination of examining physician Dr. Reynaldo De Jesús Rodríguez who noted on June 8, 2018 that Plaintiff was "oriented to time, place, and person" and had a knowledge of "current events" and "past history." Tr. 30, 1421.

Additionally, the ALJ cited the June 5, 2019 mental status exam by consultative Psychiatrist Armando Caro ("Dr. Caro"), who determined that Plaintiff's immediate memory was preserved because he could "register three unrelated objects," but that his short-term memory was impaired because he could only remember one of the three objects after 5 minutes. Tr. 30, 933. Even so, Dr. Caro concluded that Plaintiff's recent and long-term memory was intact because he could remember how he arrived at Dr. Caro's office, what had happened in the immediate hours prior to the visit, and because Plaintiff could remember his date of birth and past events. Tr. 30, 933. Dr. Caro's examination also noted that Plaintiff was able to correctly execute two steps of a three-stage command, repeat a sentence which Dr. Caro verbally presented to him, and obey a written order to close his eyes when prompted by Dr. Caro. Tr. 160. However, Plaintiff was unable to copy a picture of two intersecting Pentagons when asked to do so. Tr. 160. Plaintiff  also could not subtract 7 from 100 five times in a row but was able to spell "MUNDO" backwards. Tr. 159–60. The ALJ also noted Plaintiff's subjective complaints that he needs help and reminders to take his medication and care for himself. Tr. 30. For example, Plaintiff sticks reminders on his fridge to remind him to take his medications, and his wife helps him concentrate to pay the bills. Tr. 128, 611; 130; 613. Nevertheless, overall, the ALJ's finding that Plaintiff was mildly limited in his ability to understand, remember, and apply information was supported by substantial evidence.

### b. Interacting with others

The ALJ concluded that Plaintiff also only had a mild limitation in interacting with others—the second functional area. Tr. 30. The ALJ noted that Plaintiff's treatment notes and medical reports did not show that the Plaintiff had social difficulty or did not get along with others. Tr. 30. The ALJ cited Plaintiff's function report where he responded "no" when asked whether he had "problems getting along with family, friends, neighbors, or others." Tr. 128; 611. Instead, the ALJ concluded that Plaintiff's progress notes and medical reports as a whole depict the Plaintiff as well-behaved and cooperative. Tr. 30. Accordingly, a finding that Plaintiff was only mildly limited in interacting with others is supported by substantial evidence.

### c. Concentrating, persisting, or maintaining pace

With regard to the third functional area, the ALJ concluded that Plaintiff had a "mild limitation" in concentrating, persisting, or maintaining pace. Tr. 30. The ALJ wrote that during "office visits with his regular doctors" Plaintiff "showed no limitations" or "difficulties" with memory, concentration, and attention. Tr. 30. However, the ALJ also wrote that Plaintiff "showed no limitations with attention, concentration and memories during the independent mental evaluation" by Dr. Caro. Tr. 30. To say that Dr. Caro's independent mental evaluation found that Plaintiff had "no limitations," however, is not an accurate characterization of the record. During Dr. Caro's June 2019 mental exam of Plaintiff, Dr. Caro conducted two tests to assess Plaintiff's "attention and calculation" which was rated on a five-point scale, from zero to five. Tr. 160. In the first test, Dr. Caro noted that Plaintiff was unable to subtract 7 from 100 five times consecutively. Tr. 160. However, Dr. Caro nevertheless gave the Plaintiff a full five points in attention and calculation because Plaintiff was able to pass the second test by spelling "MUNDO" backwards. Tr. 30, 159–60. A later test also hints at some limitation in Plaintiff's

ability to concentrate. Dr. Caro gave the Plaintiff a three-stage command wherein Dr. Caro would tell the Plaintiff to take a paper in his right hand, fold it in half, and put in on the floor. Tr. 160. One point is scored for each command executed correctly. Dr. Caro noted that Plaintiff was able to correctly execute two, but not all three, of the commands. Tr. 160. Therefore, Dr. Caro's exam does not indicate that Plaintiff has "no limitations" in the third functional area; rather, some limitations, no matter how minor, are indicated from the evidence cited.

Nevertheless, despite finding that Plaintiff exhibited no limitations or difficulties in the third functional area, the ALJ still concluded that Plaintiff had a "mild limitation" in the third functional area rather than "no limitation." Tr. 30. Reasonable minds may differ as to whether Plaintiff's limitations as shown by the evidence cited is "mild" (indicating a slight impairment) or "moderate" (indicating a fair impairment). 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.00F2c–d. However, the court must uphold the ALJ's finding as long as it is supported by substantial evidence, "even if the record arguably could justify a different conclusion . . . ." Rodríguez Pagán, 819 F.2d at 3. Furthermore, even if the ALJ's finding of a mild impairment were not at least supported by substantial evidence, as further discussed below, any error in the ALJ's categorization of Plaintiff's limitation as mild constitutes harmless error which does not justify a remand.

### d. Adapting or managing oneself

Finally, in the fourth functional area—Plaintiff's ability to adapt and manage himself— the ALJ concluded that Plaintiff has a mild limitation. Tr. 30. Citing Plaintiff's treatment notes and medical record, the ALJ wrote that the record did not present evidence to support that Plaintiff struggled with his emotions or self-control. Tr. 30. Even so, the ALJ concluded that

Plaintiff still suffered from a mild limitation in adapting or managing himself, and that finding is supported by substantial evidence.

The ALJ noted that Plaintiff has arrived properly dressed to all of his treatment visits and medical evaluations. Tr. 30. For example, at Dr. Caro's mental status exam, Dr. Caro wrote that Plaintiff was "well groomed . . . [and] wears a trimmed beard and moustache . . . ." Tr. 159. Nonetheless, the ALJ recognized that Plaintiff reported "some difficulties" in taking care of himself. Tr. 30. For example, Plaintiff reports that he uses a device to put on his shoes, socks, and pants; uses a chair, brush, and handrails to bathe; uses the support of the toilet frame when getting up from the toilet; and has difficulty shaving because of hand numbness. Tr. 127; 610. However, these special needs are more accurately described as physical and have no clear connection to Plaintiff's mental impairments. For example, no evidence was cited which indicates that Plaintiff's mental impairments cause him a lack of motivation or a lack of interest in caring for himself or grooming. Plaintiff offered no evidence that Plaintiff's well-groomed appearance or any other self-care practice was the result of another person motivating or caring for Plaintiff because he was limited from doing so by his mental impairments. On the contrary, the evidence suggests that Plaintiff is willing to use extra effort, devices, and aids to dress, bathe, and use the toilet. Therefore, the ALJ's conclusion that Plaintiff's mental impairments only cause a mild limitation in adapting or managing oneself is supported by substantial evidence.

All told, it is not evident that the ALJ erred in finding that Plaintiff's medically determinable mental impairments in the four functional areas are no more than mild. Because the Plaintiff's proffered evidence fails to meet the burden that Plaintiff suffers more than a minimal limitation in his ability to do basic work, the ALJ's finding that Plaintiff's mental limitations are a non-severe impairment is also supported by substantial evidence. Tr. 30.

### e. Evidence of Plaintiff's Mental Health Hospitalization

Plaintiff, however, further contends that the ALJ erred in classifying Plaintiff's depression as non-severe because the ALJ did not adequately consider his mental health hospitalization from which he was discharged on February 13, 2020—six days before the ALJ's hearing. ECF No. 19 at 10, 23–31; Tr. 2869, 2872. Plaintiff briefly mentioned his hospitalization at "Panamericano" during the hearing with the ALJ; however, his attorney did not ask any questions about the hospitalization at the hearing. Tr. 51. Nor did Plaintiff introduce evidence of this hospitalization into the record by the time of the hearing, and it therefore was not presented to the medical expert who testified. Tr. 62. Only when the ALJ inquired did the Plaintiff specify that he had been hospitalized for fourteen days from "January 31, 2020 to February 13, 2020." Tr. 62. Nevertheless, Plaintiff faults the ALJ for the Plaintiff's own failure to introduce evidence of the hospitalization into the record, asserting that the ALJ should have halted the hearing until the medical expert could review records which Plaintiff failed to produce. ECF No. 19 at 24; Tr. 62. Once again, Plaintiff bears the burden of demonstrating that his impairments are severe, and Plaintiff cannot fault the ALJ for Plaintiff's own failure to introduce evidence into the record or raise questions at the hearing. See McDonald, 795 F.2d at 1124.

Even so, despite only having been made aware of the hospitalization at the hearing, the ALJ granted the Plaintiff ten days to submit evidence of Plaintiff's hospitalization. Tr. 62. A five-page discharge note was later included in the record as evidence of Plaintiff's hospitalization. Tr. 2868–73. Accordingly, in her decision, the ALJ acknowledged and admitted the hospitalization evidence into the record, writing, "[t]he claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before

17

the scheduled hearing date. The undersigned finds that the requirements of 20 CFR 404.935(b)
are satisfied and admit this evidence into the record." Tr. 26.

While it is true that the ALJ does not specifically cite Plaintiff's discharge note at step
two, an examination of the discharge note contains no evidence which contradicts or undermines
the ALJ's findings that Plaintiff suffers only from mild limitations in each of the four broad
functional areas. When Plaintiff was discharged, the discharge note reported that the Plaintiff had
received "the maximum benefit" from his treatment and had attained "significant improvement,"
and was "alert, active, [and] oriented" in person, place, and time." Tr. 2869–70. Plaintiff was
reported as "logical, coherent, and relevant" and expressed that he understood and could repeat
his treatment plan. Tr. 2870, 2873. Plaintiff was also reported to have developed skills for
"Relaxing techniques," "Assertive communication," "Anger/impulsiveness management,"
"Frustration management," "Self-control," "Expressing emotions," "Change acceptance," and
"Management of depressive symptoms." Tr. 2871. In short, nothing contained in the discharge
note satisfies Plaintiff's burden to show evidence that his mental limitations in any of the four
functional areas was still any worse than mild. If anything, Plaintiff exhibited further
improvement in areas such as understanding, applying information, interacting with others, and
adapting and managing himself.

Therefore, despite Plaintiff's failure to explore the issue of his hospitalization at the
hearing, and his late introduction of evidence into the record, the ALJ admitted evidence of
Plaintiff's hospitalization, acknowledged it, and nevertheless concluded that Plaintiff's mental
limitations were non-severe. Tr. 26, 30. Nothing contained in the additional evidence regarding
Plaintiff's mental health hospitalization undermines the ALJ's finding based on substantial

18

evidence that Plaintiff's mental limitations were non-severe. Accordingly, Plaintiff's argument that the ALJ erred with regard to his mental health hospitalization fails.

### 2.    Harmless Error

Even if the ALJ had erred at any point in deciding that Plaintiff's mental impairments were non-severe at step two, any such error would have been harmless. If the ALJ errs at the administrative level, on appeal the district court will not reverse the error if it was "harmless," meaning that the ALJ's error would not have been outcome determinative. See Colón v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing Pérez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)). For example, when a claimant's case for benefits rests on a single impairment, the ALJ may read the record more generously and draw inferences that are more favorable to a severity finding so that the Plaintiff's claim does not end at step two. Hines v. Astrue, 2012 WL 1394396, at *12 (D.N.H. Mar. 26, 2012). However, the ALJ need not make such favorable inferences if there are other severe impairments that ensure that the claim will survive the step two *de minimis* hurdle. See id. If the ALJ finds that at least one of the claimant's impairments is severe, the step two inquiry is resolved in the claimant's favor and the ALJ may move ahead with the subsequent steps. Hickman v. Comm'r of Soc. Sec., 399 F. App'x 300, 302 (9th Cir. 2010).

Accordingly, even if the ALJ erroneously found that some of the claimant's impairments are non-severe at step two, the error is harmless if the ALJ continues the sequential analysis and considers both the claimant's severe and non-severe impairments when formulating the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.2007); Mason v. Astrue, Civ. No. 12-017, 2013 WL 391173 at *4 (D.N.H. Jan. 30, 2013); Hines, 2012 WL 1394396, at *12–13; 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we

are aware, including your medically determinable impairments that are not 'severe' . . .''). Even so, the claimant bears the burden of providing evidence to establish how his impairments limit his RFC. 42 U.S.C. § 423(d)(5)(A); <u>Freeman</u>, 274 F.3d at 608.

In the present case, of all the Plaintiff's impairments, the ALJ only found that Plaintiff's major depressive disorder and generalized anxiety disorder were non-severe. Tr. 29. The ALJ, however, determined that Plaintiff suffers from four other severe impairments. Tr. 30. Therefore, in this case, there was no risk that Plaintiff's case would terminate at step two if the ALJ found Plaintiff's mental impairments non-severe. Accordingly, despite the non-severity finding on Plaintiff's mental impairments, the ALJ resolved step two in favor of Plaintiff, and proceeded through the rest of the sequential analysis. <u>See</u> Tr. 30–37. Additionally, the ALJ expressly wrote that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." Tr. 29. For example, in formulating the RFC, the ALJ recognized that Plaintiff claimed to have "marked restrictions in activities of daily living, in social functioning, and in maintaining concentration, persistence or pace." Tr. 30; 130–31. Therefore, any error that the ALJ made regarding Plaintiff's limitations in the four functional areas is harmless, because the ALJ nevertheless decided step two in Plaintiff's favor and still considered his mental impairments when formulating the RFC.

## C. THE ALJ'S FINDING THAT THERE EXIST ENOUGH JOBS FOR PLAINTIFF IN THE NATIONAL ECONOMY

Plaintiff also argues that the ALJ erred at step five of the sequential process because there are not enough available jobs in the national economy for the three occupations presented by the vocational expert and accepted by the ALJ. ECF No. 19 at 21–23. At step five of the sequential process, the Commissioner of Social Security bears the burden of proving "the existence of other

jobs in the national economy that the claimant can perform." Muñoz Cintrón v. Commissioner of Social Security, 2021 WL 840905, *5 (D.P.R. Mar. 5, 2021) (citing Vega Valentín v. Astrue, 725 F. Supp. 2d 264, 268 (D.P.R. 2010)) (internal quotations omitted). Work exists in the national economy when work " 'exists in significant numbers either in the region where such individual lives or in several regions of the country.' " Vélez Pantoja v. Astrue, 786 F. Supp. 2d 464, 466 n.1 (D.P.R. 2010) (quoting 42 U.S.C. § 423(d)(2)(A)). Therefore, "[i]solated jobs that exist only in very limited numbers and relatively few locations outside of the region where [the plaintiff] lives are not considered 'work which exists in the national economy.' " 20 C.F.R. § 404.1566(b). "However, courts have overlooked an absence of testimony that jobs do exist 'in several regions of the country' when 'a reasonable mind could conclude' that they do." Vining v. Astrue, 720 F. Supp. 2d 126, 138 (D. Me. 2010).

In this case, the VE testified that the Plaintiff could work as a "Document Preparer" with an availability of 30,000 jobs in the national economy; "Call Out Operator" with 15,000 jobs in the national economy; or as a "Ticket Counter" which represents 16,000 jobs. Tr. 37; Tr. 69. Plaintiff estimates, without evidentiary support, that the number of jobs for all three occupations in Puerto Rico would be "at most in the hundreds." ECF No. 19 at 21. On that premise, Plaintiff speculates that an occupation which presents 30,000, 15,000 and 16,000 jobs in the national economy would not offer a sufficient number of jobs for Plaintiff in the local economy of Puerto Rico. ECF No. 19 at 22.

While perhaps occupations with 30,000, 16,000, and 15,000 jobs in the national economy are not indicative of abundance, occupations with this number of positions available nationally are nevertheless in lockstep with the number of jobs which courts have recognized as sufficient for the purposes of step five. Dashnaw v. Astrue, 2011 WL 5040708, at *6 (D.N.H. Oct. 24,

2011) ("The vocational expert testified that more than 30,000 positions exist in the national economy for the three sedentary jobs identified by the ALJ. That is a 'significant number' of jobs in the national economy."); Vining, 720 F. Supp. 2d at 137 ("The figure of 11,000 jobs nationwide is in line with what courts have held to be a 'significant' number for purposes of Step 5 analysis."); Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) ("200 jobs of addresser or document preparer in Iowa and 10,000 in the national economy" was sufficient for step five).

In contrast, all the cases which Plaintiff cites in support of his argument involve facts where the number of jobs in the national economy were lower than the number of jobs at issue in this case. Beltrán v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012) ("Although 1,680 jobs might seem a 'significant number' standing alone, distributing these jobs between several regions across the nation shows that it is not 'significant' after all."); Byrd v. Astrue, 2012 WL 13148983, at *2 (W.D. Wash. Jan. 12, 2012) (finding that "the existence of 12,500 jobs nationally" does not constitute a significant number of jobs for the step five analysis.). Plaintiff even cites to one case where the court found in dicta that an occupation with fewer available jobs than at issue here was adequate. See Hamilton v. Colvin, 105 F. Supp. 3d 223, 231 (N.D.N.Y. 2015) (Noting that 5,160 jobs in the national economy was not enough but that "numbers of jobs in the ballpark of 10,000 to 11,000 have been held significant.") (internal quotations omitted).

Plaintiff also does not argue that any of the three jobs which the VE identified are somehow regional or isolated outside of Puerto Rico, and instead contends only that Puerto Rico has a "(distressed) economy." ECF No. 19 at 22. However, the three jobs which the VE identified (document preparer, call out operator, and ticket counter) are common jobs and are not restricted to any specific region. See John D.C. v. Comm'r of Soc. Sec., 2018 WL 6018859, at *4–5 (S.D. Ill. Nov. 16, 2018) ("Plaintiff does not argue the jobs the VE identified exist only in

isolation or in concentrated regions. Any such argument would be frivolous. The jobs identified by the VE (cleaner, kitchen helper, and laundry worker) are not regional.").

In sum, the number of jobs which the VE identified in this case are sufficient for a finding that there are jobs available to the Plaintiff in the national economy or several regions of the country, and there is nothing that would indicate that the occupations identified are isolated or regionally located outside of Puerto Rico in a significant way. See Hayden v. Saul, 2020 WL 888002, at *11 (E.D. Mo. Feb. 24, 2020) ("The absence of any reason to believe these jobs only exist in a few isolated regions supports a finding that the ALJ's Step Five finding was supported by substantial evidence."). Therefore, the ALJ's finding at step five was supported by substantial evidence and does not warrant a remand.

## IV.   CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits is supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of March, 2022.

s/Marcos E. López
U.S. Magistrate Judge
